**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DESHON HOLLOWAY,

                              Plaintiff

                - v -                              Civ. No. 9:05-CV-0501
                                                        (GLS/RFT)

DONALD SELSKY, Director of Special Housing;
THOMAS RICKS, Superintendent; JOHN DONELLI,
Deputy Superintendent; CURTIS DROWN, Commissioner
Hearing Officer,

                              Defendants.
_____

**APPEARANCES:**                                    **OF COUNSEL:**

DESHON HOLLOWAY
Plaintiff, *Pro se*
96-A-8863
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

HON. ELIOT SPITZER                          GERALD J. ROCK, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION and ORDER

      Plaintiff Deshon Holloway, currently incarcerated at Clinton Correctional Facility, brings this *pro se* action, pursuant to 42 U.S.C. § 1983, alleging Defendants violated his civil rights while he was a prisoner at Upstate Correctional Facility. Specifically, Plaintiff asserts that (1) Defendant Curtis Drown deprived him of his Fourteenth Amendment procedural due process rights during various Disciplinary Hearings, presided over by Defendant Drown, when Drown precluded Plaintiff

from attending such Hearings; and (2) Defendants Donald Selsky, Thomas Ricks, and John Donelli, in reviewing Plaintiff's appeals of said Disciplinary Hearings failed to take any action rectifying such violations. *See generally* Dkt. No. 1, Compl. Presently before the Court is Defendants' Motion to Dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 26 & 32.[1] Plaintiff opposes Defendants' Motion. Dkt. No. 31 & 33. For the reasons listed below, it is recommended that Defendants' Motion be **granted** and Plaintiff's Complaint be **dismissed** in its entirety.

## I. BACKGROUND

The following facts are derived from the Complaint, which on a Motion to Dismiss, this Court must take as true. *See infra* Part II.A. Succinctly stated, Plaintiff's civil rights claims evolve from five separate Superintendent Disciplinary Hearings,[2] all presided over by Defendant Drown, on five separate Misbehavior Reports. At each Hearing, Defendant Drown precluded Holloway from attending. It appears that the basis for each preclusion, as indicated on the "2176 Forms" completed by Defendant Drown, was Plaintiff's failure to maintain his personal hygiene, thus forfeiting his right to attend. The dates and procedural postures for the Hearings are summarized as follows:[3]

**1)** On Februarst 23, 2002, Plaintiff was issued a Misbehavior Report, authored by

---

[1] The Motion was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] In New York State, there are three types of disciplinary hearings for inmates depending on the type of infraction and the penalty which may be imposed. Tier III, or Superintendent Hearings, concern the most serious violations and may result in unlimited confinement in a special housing unit (SHU) (up to the length of the sentence) and recommended loss of "good time" credits. *See* N.Y. COMP. CODES R. & REGS. tit. 7, §§ 251-2.2(b)(3) & 270.3(a)(3); *see also Scott v. Albury*, 156 F.3d 283, 285 (2d Cir. 1998).

[3] We note that Plaintiff does not contest any of the Misbehavior Reports that initiated each Hearing nor has he named as Defendants any author of such Report.

Officer McComsey. A Superintendent's Hearing commenced on March 5, 2002, and concluded on March 7, 2002, with a disposition of seven (7) days restricted diet and mandatory $5.00 surcharge. On March 7, 2002, Plaintiff submitted a "discretionary review letter"[4] to Defendant Ricks, then Superintendent, who, on March 8, 2002, referred the communication to Defendant Donnelly, Deputy Superintendent. On March 13, 2002, Defendant Donnelly responded noting Plaintiff's absence resulted from Plaintiff's refusal to maintain basic hygiene and he could appeal his decision through the normal appellate procedure. Thereafter, Defendant Ricks approved the guilty disposition and penalties imposed. On March 31, 2002, Plaintiff appealed to Defendant Selsky, Director of Special Housing, who, on April 26, 2002, without stating a reason therewith, reversed the disposition (Compl. at ¶¶ 13-26);

**2)** On February 24, 2002, Plaintiff was issued a Misbehavior Report, authored by Officer McComsey. A Superintendent's Hearing was held in its entirety on March 7, 2002, with a disposition of three months in a special housing unit (SHU) with loss of commissary, packages, and phone privileges and mandatory $5.00 surcharge. Thereafter, on unspecified dates, Plaintiff appealed the disciplinary disposition, which was affirmed by Defendant Ricks. On March 31, 2002, Plaintiff appealed to Defendant Selsky, who, on April 26, 2002, without stating a reason therewith, reversed the disposition (Compl. at ¶¶ 27-37);

**3)** On March 16, 2002, Plaintiff was issued a Misbehavior Report, authored by Officer Herbert. A Superintendent's Hearing was held in its entirety on March 28, 2002, with a disposition of sixty (60) days in SHU with loss of commissary, packages, and phone privileges and mandatory $5.00 surcharge. On unspecified dates, Plaintiff appealed and Defendant Ricks approved the guilty disposition and penalties imposed. On April 7, 2002, Plaintiff appealed to Defendant Selsky, who on June 10, 2002, without stating a reason therewith, reversed the disposition (Compl. at ¶¶ 38-47);

**4)** On March 25, 2002, Plaintiff was issued a Misbehavior Report, authored by Officer

---

[4] It is possible that this "discretionary review letter" was submitted to Defendant Ricks pursuant to the New York State Regulation wherein aside from the usual appellate procedure, a superintendent may, in his or her discretion, reduce the penalty imposed. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 254.9.

*-3-*

Rabideau. A Superintendent's Hearing commenced on March 28, 2002, and concluded on March 29, 2002, with a disposition of seven (7) days restricted diet and mandatory $5.00 surcharge. On unspecified dates, Plaintiff appealed and Defendant Ricks approved the guilty disposition and penalties imposed. Presumably concomitantly, on April 15, 2002, Plaintiff submitted a "discretionary review letter" to Defendant Ricks, which was responded to by Defendant Donelli on April 16, 2002, indicating that an appeal had already been filed and was pending. On April 17, 2002, Plaintiff appealed to Defendant Selsky, who on May 6, 2002, without stating a reason therewith, reversed the disposition (Compl. at ¶¶ 48-60);

**5)** On April 7, 2002, Plaintiff was issued a Misbehavior Report, authored by Officer Rabideau. A Hearing was held in its entirety on April 16, 2002, with a disposition of three (3) days restricted diet and mandatory $5.00 surcharge. On April 16, 2002, Plaintiff submitted a "discretionary review letter" to Defendant Ricks, which was responded to, on April 17, 2002, by Defendant Donnelly. Donnelly noted that Plaintiff's absence was due to Plaintiff's refusal to maintain basic hygiene and Plaintiff could appeal through the normal appellate procedure. On May 8, 2002, Plaintiff appealed to Defendant Selsky, who on June 6, 2002, without stating a reason therewith, affirmed the disposition (Compl. at ¶¶ 61-72).

## II. DISCUSSION

### A. Motion to Dismiss Standard

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). "Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997). On a motion to dismiss, the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in

support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See id.*; *see also Wheeldin v. Wheeler*, 373 U.S. 647, 648 (1963) (inferring facts from allegations of complaint). In construing the complaint favorably to the pleader, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Scheuer v. Rhodes*, 416 U.S. at 236; *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994). In spite of the deference the court is bound to give to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**B. Claims Against Defendants in their Official Capacities**

Plaintiff asserts claims under 42 U.S.C. § 1983 against the Defendants in their official and individual capacities. The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (*citing Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. at 98; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792 (N.D.N.Y. 1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.*, 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir. 1993) & *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters., Inc. v. Jorling*, 3 F.3d at 606; *see*

*also Rourke v. New York State Dep't. of Corr. Servs.*, 915 F. Supp. at 540.  Since the only relief sought herein is compensatory and punitive monetary relief, Plaintiff's claims against all Defendants in their official capacities should be **dismissed**.

### C.  Plaintiff's Due Process Claims

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed [] the sentence in . . . an unexpected manner."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  *Giano v. Selsky* 37 F. Supp. 2d 162, 167 (N.D.N.Y. 1999), *vacated and remanded on other grounds by* 238 F.3d 223 (2d Cir. 2001) (citing *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996)).  In *Sandin*, the Supreme Court ruled that the United States Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*, 515 U.S. at 484); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).  Thus, a prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed such an "atypical and significant hardship."  *Sandin v. Connor*, 515 U.S. at 484 (holding an inmate has no constitutional right to any procedural safeguards unless the deprivation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

Though the length of the confinement is one guiding factor in a *Sandin* analysis, the Second

Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999). Nevertheless, the Court of Appeals has suggested that confinement for a period of less than 101 days would not constitute an atypical and significant hardship. *See Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000); *see also Hanrahan v. Doling*, 331 F.3d 93, 97-98 (2d Cir. 2003).

In the case at bar, Plaintiff's disciplinary dispositions ranged from three to seven days of restricted diet to sixty to ninety days confinement in SHU with corresponding loss of privileges. According to Plaintiff, each sentence imposed, *sans* one – the three days restricted diet – were reversed on appeal, usually within a month's time. Though, given the administrative reversals, it remains unclear as to how much of the actual disciplinary sentences Plaintiff was subjected, we note that Plaintiff has failed to allege one single fact as to how any of the five disciplinary sentences, whether reversed or affirmed, were in any way atypical and significant. Since Plaintiff failed to adduce facts sufficient to assess the actual conditions of his disciplinary confinement, we can only assess the atypical and significant precurser based upon length of sentence. The length of each of Plaintiff's separate sentences fall short of such threshold. Even if we were to consider Plaintiff's sentences in the aggregate, such combined sentence is not of sufficient duration to consider them *per se* atypical and significant. Therefore, as Plaintiff has failed to make this threshold showing, he fails to allege a liberty interest at stake, thus precluding our review of the process he received.

In moving for the stated relief of dismissal, we note that Defendants fail to address this threshold analysis and instead seemingly urge us to hold that a prisoner has no due process right to be physically present at disciplinary hearings. We acknowledge that the caselaw provided by Defendants from the Western District of New York does in fact state that a prisoner does not have a

due process right to be physically present at his disciplinary hearing. *See Claudio v. Herbert*, 2005 WL 327106, at *10 (W.D.N.Y. Feb. 10, 2005); *Bogle v. Murphy*, 2003 WL 22384792, at *5-7 (W.D.N.Y. Sept. 9, 2003). In *Bogle v. Murphy*, the Western District Court starts with the premise that when procedural safeguards are provided by the state, but are not required by the U.S. Constitution, deprivation therewith cannot constitute a violation of the Due Process clause. 2003 WL 22384792, at *4. Thus, though New York State Regulations provide that an inmate has the right "to be present at the hearing unless he or she refuses to attend, or is excluded for reasons of institutional safety or correctional goals," a denial of such right will not necessarily equate into a Due Process violation unless the U.S. Constitution similarly guarantees such right. *Id*. Then, based upon the reasoning of the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974) and the Second Circuit in *Francis v. Coughlin*, 891 F.2d 43 (2d Cir. 1989), the district court found that a prisoner's right to be physically present at his disciplinary hearing could not be implied as included among the minimum due process requirements. *Id*. at *5. The court further reasoned that although the Second Circuit held otherwise in *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986), wherein it was determined that the requirement set forth in *Wolff* that an inmate be allowed to call witnesses and present documentary evidence in his defense included the opportunity to "appear" at the hearing, such implication was "explicitly rejected" by the Second Circuit when it decided *Francis* three years later.

While it appears that the notion that a prisoner has no due process right to be physically present at a disciplinary hearing is "settled" law in this Circuit, *see Francis v. Coughlin*, 891 F.2d at 48 (noting that while *Wolff* established a prisoner's right to call witnesses, the question of whether the prisoner had to be *present* during testimony presents a different issue which the court answered

in the negative), what gives this Court pause is, first, the fact that *Francis* was decided pre-*Sandin* and what effect, if any, the timing of such decision has on this issue, and second, and perhaps fueling our uncertainty, is subsequent contrary Second Circuit decisions that seem to recognize a prisoner's due process right to be present at disciplinary hearings. The first Second Circuit decision to which we refer is *Young v. Hoffman*, 970 F.2d 1154 (2d Cir. 1992), decided after *Freeman* and *Frances*, which unequivocally states, "[t]he Due Process Clause provides inmates with several protective procedures that they may expect at disciplinary hearings, *including the opportunity to appear at the hearing* and to call witnesses. 970 F.2d at 1156 (citing *Freeman v. Rideout*, 808 F.2d at 953 & *Wolff v. McDonnell*, 418 U.S. at 564-66, and further noting the qualified nature of such rights in that they may at times yield to institutional safety or correctional goals) (emphasis added). In *Young*, however, the Second Circuit declined to address whether the prisoner suffered any denial of due process since the prisoner ultimately obtained due process in connection with the correctional facility's administrative appeal, which resulted in a reversal of the disciplinary sentence before he served any of the sentence, thus curing any procedural defect. *Id*. (citation omitted).[5] The next Second Circuit decision which gives us pause, despite the fact that it is an unpublished decision, is *Chavis v. Zodlow*, 128 Fed. Appx. 800, 2005 WL 834646, at **3-4 (2d Cir. Apr. 12, 2005). In *Chavis*, the prisoner alleged that he was evicted from and denied assistance during his disciplinary hearing and was denied an opportunity to call witnesses at two other disciplinary hearings. Applying a similar standard of dismissal applicable in this case, the Second

---

[5] It is important to note that later decisions in this Circuit have qualified that *Young's* holding is limited to situations where the prisoner had not served any of his disciplinary sentence prior to the administrative reversal. *See, e.g., Walker v. Bates*, 23 F.3d 652, 657 (2d Cir. 1994); *Bogle v. Murphy*, 2003 WL 22384792, at *5 (W.D.N.Y. Sept. 9, 2003); *Kayou v. Greifinger*, 1994 WL 532869, at *5 (S.D.N.Y. Sept. 29, 1994); *Paris v. Coughlin*, 1993 WL 328199, at *7-8 (N.D.N.Y. Aug. 24, 1993). Because it is unclear from Plaintiff's Complaint whether he actually served any of the disciplinary dispositions, we decline to recommend *Young* as a further basis for dismissal.

Circuit cited *Wolff* for, *inter alia*, the proposition that a prisoner has a "limited right to be present during his disciplinary hearing" and held that taking the plaintiff's allegations as true and drawing all inferences in his favor, it did not appear beyond doubt that the plaintiff could "prove no set of facts in support of his claims which would entitle him to relief." *Id*. at **4 (other citation omitted). As clearly Plaintiff fails to make the necessary threshold showing of atypical and significant, this Court need not assess and weigh in on the apparent inconsistency.[6] Furthermore, in light of our finding that Plaintiff failed to allege a constitutional violation, we decline to address Defendants' assertion of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Based on the above, we recommend granting Defendants' Motion and dismissing Plaintiff's Fourteenth Amendment claim.

### D.  Eighth Amendment

In his Complaint, Plaintiff alleges a violation of the Eighth Amendment, seemingly against Defendant Drown, perhaps for the disciplinary sentences imposed. Though Defendants do not address this aspect of Plaintiff's Complaint, we can easily dispose of such claim.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d

---

[6] We note that other courts in other circuits seem to recognize that *Wolff* does provide for a prisoner's limited or qualified right to be present at disciplinary hearings, a right which can be waived by the prisoner. *See*, *e.g., Moody v. Miller*, 864 F.2d 1178, 1181 (5th Cir. 1989) (cited in *Booth v. Stewart*, 2005 WL 2449956, at *6 (D. Ariz. Sept. 29, 2005)); *Davis v. Lane*, 814 F.2d 397, 402 (7th Cir. 1987) (cited in *Musgrove v. Johnson*, 1996 WL 115172, at *& (N.D. Ill. Mar. 13, 1996)).

Cir. 2003)). Punishments prohibited by the Eighth Amendment include those that are "grossly disproportionate" to the severity of the crime including unnecessary and wanton inflictions of pain which are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002).

To prove a violation of the Eighth Amendment, an inmate must show,

> (1) that the deprivation alleged is "objectively sufficiently serious" such that the plaintiff was denied "the minimal civilized measure of life's necessities," and (2) that the defendant official possessed a "sufficiently culpable state of mind" associated with "the unnecessary and wanton infliction of pain."

*Trammell v. Keane*, 338 F.3d at 161 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The disciplinary sentences at issue involved confinement to SHU for a set period of time, loss of privileges, and restricted diet. We can only presume that perhaps Plaintiff raises Eighth Amendment violations with regard to the conditions of confinement he was subjected to in SHU and the nutrition received in conjunction with his restricted diet. In the context of a challenge to prison conditions, the requisite scienter is that of deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. at 834. Furthermore, the Eighth Amendment requires that prisoners be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1989)); *see also Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (prisoners are guaranteed a nutritionally adequate diet).

Plaintiff's Eighth Amendment claims are wholly inadequate. Beyond stating the contours of each disposition, Plaintiff does not allege any facts regarding the actual conditions of his confinement, what constituted his restricted diet, and what portion, if any, of the sentences were

actually served in light of the administrative reversals. In light of Plaintiff's failure to allege any facts, obviously this Court cannot adjudicate whether he could prove such omitted facts. Accordingly, we recommend dismissal of Plaintiff's Eighth Amendment claims.

### E. Personal Involvement

Plaintiff asserts that Defendants Ricks, Donelli, and Selsky violated his civil rights when they failed to address Defendant Drown's due process violations. It appears that Plaintiff seeks to hold Defendants Ricks and Donelli liable under a theory of supervisory liability for affirming the disciplinary sentences. Plaintiff alleges the same theory against Defendant Selsky, despite Plaintiff's own acknowledgment that Selsky reversed at least four of the five sentences.

The doctrine of *respondeat superior* is inapplicable to § 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a high position of authority).

Notably, however, in order for a supervisor to be liable under § 1983, a plaintiff must first establish an underlying constitutional deprivation. *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999). This Court has already determined that Plaintiff failed to demonstrate any underlying constitutional deprivations. Consequently, Plaintiff cannot pursue a theory of supervisory liability as to Defendants Ricks, Donelli, or Selsky. Thus, this Court recommends that Plaintiff's claims against these Defendants be **dismissed**.

### III. CONCLUSION

**WHEREFORE,** based on the foregoing, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 26) be **granted** and Plaintiff's entire Complaint be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing Report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS Report WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir 1993) *citing Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989); *see also* 28 U.S.C. 636(b)(1); FED. R. CIV. P. 72(b), 6(a) & 6(e).

Date: September 5, 2006
Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge